IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

UNITED STATES OF AMERICA,

      Plaintiff,

  vs.

                          No.    19-20165-JTF-dkv

TERRY REED,

      Defendant.

_____

REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO SUPPRESS
_____

On June 27, 2019, the grand jury returned an indictment charging the defendant, Terry Reed ("Reed"), with one count of possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1), one count of possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c), and two counts of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). (Indictment, ECF No. 1.) Before the court is Reed's December 20, 2019 motion to suppress "any and all evidence" obtained as a result of the search of Reed's residence located at 2694 Kate Bond Road in Memphis, Tennessee.  (Mot. to Suppress 1, ECF No. 28.) Reed argues that his Fourth and Fifth Amendment rights were violated. (*Id.*) The government filed a response on January 3, 2020. (Gov't's Resp., ECF No. 29.) The motion has been referred to the United States

Magistrate Judge for a report and recommendation. (ECF No. 30.)

Pursuant to the reference, an evidentiary hearing was held on February 19, 2020. (ECF No. 37.) At the hearing the government called former Memphis Police Department ("MPD") Detective Brandon Evans ("Detective Evans") as its only witness. Reed called MPD Detective Otis Edwards ("Edwards") as his only witness. Reed also introduced four exhibits: (1) Reed's May 18, 2018 signed statement and waiver of rights (Reed's Statement & Waiver, Ex. 1); (2) the May 17, 2018 Shelby County General Sessions Court affidavit, application, and search warrant for 2694 Kate Bond Road, Memphis, Tennessee (Aff., App., & Search Warrant for 2694 Kate Bond Road, Ex. 2.); (3) the May 17, 2018 Shelby County General Sessions Court affidavit, application, and search warrant for 3900 Jackson Avenue, Memphis, Tennessee (Aff., App., & Search Warrant for 3900 Jackson Ave., Ex. 3); and (4) the May 17, 2018 Shelby County General Sessions Court affidavit, application, and search warrant for 3792 Orchi, Memphis, Tennessee (Aff., App., & Search Warrant for 3792 Orchi, Ex. 4).

After careful consideration of the statements of counsel, the testimony of witnesses, the evidentiary exhibits, and the entire record in this case, this court submits the following findings of fact and conclusions of law and recommends that the motion to suppress be denied.

I.   PROPOSED FINDINGS OF FACT

On May 17, 2018, Detective Evans obtained three search warrants with Reed listed as the target in all three.  He obtained a document only search warrant for 2694 Kate Bond Road for bank/financial records, U.S. currency, drug records, and drug proceeds.  (Aff., App., & Search Warrant for 2694 Kate Bond Road, Ex. 2.)  The supporting affidavit detailed Detective Evans's investigation of Reed and noted that Detective Evans had "good ground" to believe that Reed was in possession of documents related to drug trafficking at 2694 Kate Bond Road.  (*Id.*)  He also obtained search warrants for Reed's business at 3900 Jackson Avenue and Reed's mother's home at 3792 Orchi for marijuana, drug paraphernalia, proceeds, and records, and bank/financial records.  (*See* Aff., App., & Search Warrant for 3900 Jackson Ave., Ex. 3; Aff., App., & Search Warrant for 3792 Orchi, Ex. 4.)  The affidavits in support of all three search warrants were prepared and sworn to by Detective Evans, and all three search warrants were signed by Shelby County General Sessions Judge Yolanda R. Kight.

All three search warrants were executed on May 18, 2018.  The following items were recovered from the 2694 Kate Bond Road residence: (i) a Glock 40 caliber handgun; (ii) a Smith and Wesson handgun; (iii) 2.1 grams of THC wax; (iv) 18.7 grams of marijuana; and (v) approximately 18 live rounds of ammunition.  (Aff., App.,

& Search Warrant for 2694 Kate Bond Road, Ex. 2.)

A.    The 2694 Kate Bond Road Affidavit and Search Warrant

Detective Evans's affidavit in support of the document search warrant for the 2694 Kate Bond Road residence outlined his specialized education and training and Detective Evans's investigation into Reed's alleged drug trafficking activities. Detective Evans "received specialized education and training in the investigation and detection of illegal drug activity" from MPD. (Aff., App., & Search Warrant for 2694 Kate Bond Road, Ex. 2.)  Detective Evans completed one week of basic investigators school; forty hours of training in money laundering, asset forfeiture, and financial crime investigation; and has nearly a decade of relevant experience as a police officer. (*Id.*)

As to his investigation of Reed, Detective Evans stated that a reliable confidential informant (the "CI")[1] observed Reed selling

---

[1] The 2694 Kate Bond Road affidavit stated that the CI had been reliable in the past.  Specifically, Detective Evans stated that CI helped MPD complete "more than (4) separate drug seizures." (Aff., App., & Search Warrant for 2694 Kate Bond Road, Ex. 2.)

marijuana from 3900 Jackson Avenue and 3792 Orchi.[2]  (Aff., App., & Search Warrant for 2694 Kate Bond Road, Ex. 2.)  The CI also purchased marijuana from Reed at 3900 Jackson Avenue and 3792 Orchi.  (*Id.*)  The marijuana tested positive for THC.  (*Id.*)

Detective Evans stated that he utilized various MPD databases to learn that Dominque Johnson ("Johnson") had active utilities in her name for 2694 Kate Bond Road.  (*Id.*)  Based on prior dealings with Reed and information provided by the CI, Detective Evans stated that he believed Johnson and Reed to be boyfriend and girlfriend with a history of cohabitation.  (*Id.*)  Detective Evans stated that he and MPD Detective Gross ("Detective Gross") conducted surveillance of 2694 Kate Bond Road and observed Johnson and Reed leaving the residence together in a brown Cadillac

---

[2]  In his affidavit in support of the search warrant for 3792 Orchi, Detective Evans swore that he had observed Reed make hand to hand drug transactions with numerous people throughout the neighborhood streets close to 3792 Orchi.  (Aff., App., & Search Warrant for 3792 Orchi, Ex. 4.)  He further stated that Reed had four prior felony convictions and two prior misdemeanor convictions for marijuana.  (*Id.*)  He also stated that Reed's mother resides at the Orchi address. (*Id.*)  Judge Kight had theses sworn facts before her at the time the three search warrants were issued.

Escalade.[3]  (*Id.*)  Based on the information provided by the CI and the detectives' surveillance of 2694 Kate Bond Road, Detective Evans stated that he believed there was probable cause to suspect that Reed was in possession of records relating to drug trafficking at 2694 Kate Bond Road.  (*Id.*)

B.    Detective Evans's Testimony

The government called Detective Evans as its only witness. Detective Evans testified that he was currently employed with the Drug Enforcement Agency in Memphis, Tennessee.  Detective Evans has been in law enforcement since 2009.  In May 2018, Detective Evans was employed as a detective with MPD's Organized Crime Unit ("OCU").

On May 18, 2018, at approximately 6:00 AM, Detectives Evans and Gross conducted surveillance of 2694 Kate Bond Road from the parking lot of a nearby elementary school.  At approximately 6:30 AM, the detectives observed Johnson open the garage and enter the brown Cadillac Escalade with her children.  The detectives approached Johnson and informed her that they were executing a search warrant for 2694 Kate Bond Road.  According to Detective

---

[3] In the affidavit in support of the search warrant for the OK Tire business at 3900 Jackson Avenue, Detective Evans stated that he had also observed Reed and Johnson leave 2694 Kate Bond together, drive to OK Tire, and open the business, and that each of them had unlocked the business on several occasions with their own set of keys. (Aff., App., & Search Warrant for 3900 Jackson Ave., Ex. 3.) Judge Kight had theses sworn facts before her at the time the three search warrants were issued.

Evans, Johnson was cooperative and informed the detectives that Reed was upstairs sleeping.  Approximately six MPD OCU officers entered the residence and located Reed asleep in an upstairs bedroom.  Detective Evans testified that all the officers had their handguns un-holstered as they entered the residence and approached Reed.  Once he was awake, Reed informed the officers that there was a handgun under the mattress.  The officers allowed Reed to get dressed and placed Reed in handcuffs.  After Reed was detained, the officers searched the residence for approximately one and a half to two hours.  Detective Evans stated that at some point, he and Detective Edwards decided to interview Reed in a separate upstairs bedroom.  According to Detective Evans, Reed was cooperative and polite throughout the search and interview process.

Because Reed was calm and cooperative, Detective Evans decided to remove the handcuffs from Reed before the interview started.  According to Detective Evans, before the interview started, Reed signed a form waiving his *Miranda* rights entitled "Memphis Police Department Organized Crime Unit Defendant Statement" ("MPD Defendant Statement Form") at approximately 9:05 AM.  (*See* Reed's Statement and Waiver, Ex. 1.)  Detective Edwards prepared the top page of the form.

Detective Evans stated that he read aloud each *Miranda* warning prior to questioning Reed.  Detective Evans testified that Reed

was asked if he understood each *Miranda* warning separately. According to Detective Evans, Reed initialed next to each *Miranda* warning on the top page of the MPD Defendant Statement Form. Detective Evans stated that he read aloud the portion of the MPD Defendant Statement Form entitled "waiver of rights." The waiver of rights portion stated: "I have read this statement of my rights and I understand what my rights are. No promises or threats have been made to me and no pressure, force, or coercion of any kind has been used against me. At this time, I am ready to answer questions without a lawyer present." According to Detective Evans, Reed verbally informed the detectives that he was agreeing to waive his rights and provided his signature and printed name directly under the "waiver of rights" portion of the MPD Defendant Statement Form at 9:05 AM. After Detectives Evans and Edwards informed Reed of his rights and obtained Reed's written waiver, they began the interview. Detective Evans testified that Reed was not questioned before he signed the written waiver.

The second, third, fourth, and fifth pages of the MPD Defendant Statement Form includes preprinted question and answer prompts where officers handwrite the contents of suspect interviews. Detectives Evans and Edwards filled out various portions of the question and answer prompts for Reed's interview. Reed was instructed to read each question and answer and to initial at the bottom of the page to confirm that each question and answer

was accurate.[4]

Detective Evans testified that the interview with Reed lasted approximately forty-five minutes. The last page of the MPD Defendant Statement Form contains Reed's signature and notes the end time as 9:49 AM. Detective Evans stated that Reed was not threatened during the interview. Further, Reed had the opportunity to use the bathroom and appeared to be well-rested. Detective Evans testified that based on his prior dealings with Reed, he believed Reed had significant experience with the criminal justice system.

C.    Detective Edwards's Testimony

Reed called Detective Edwards as his only witness. Detective Edwards was subpoenaed on short notice and could not recall many of the details from May 18, 2018. Detective Edwards testified that he was currently employed as a detective with MPD's OCU. He has been with MPD for fifteen years and with the OCU for twelve years.

Detective Edwards could not recall the exact time that officers arrived at 2694 Kate Bond Road on May 18, 2018. Detective Edwards testified that approximately six OCU officers searched the house. Detective Edwards, acting as the "shield," was the first

---

[4] Reed's initials appear at the bottom right-hand corner of each page of the MPD Defendant Statement Form. (*See* Reed's Statement & Waiver, Ex. 1.)

officer inside.  He could not recall where the officers encountered Reed inside or whether the officers had their weapons drawn as they entered the residence.

Detective Edwards confirmed that his handwriting was on the first page of the MPD Defendant Statement Form.  He also stated that he signed the MPD Defendant Statement Form as a witness. Detective Edwards stated that he and Detective Evans interviewed Reed in one of the upstairs bedrooms.  He was unable to recall whether Reed was handcuffed during the interview.  He stated that he questioned Reed during the interview.  Detective Edwards was unable to recall whether he or Detective Evans read Reed his *Miranda* rights.  Detective Edwards stated that his handwriting was on page two of the MPD Defendant Statement Form.  He testified that he did not write any of the questions or answers on pages four or five.  He could not recall whether Reed was asked the pre-typed questions at the end of the form on page five.  He could not recall the length of the interview.  He was unable to recall whether Reed was questioned before 9:05 AM.  He was also unable to recall whether the officers had completed searching the residence prior to Reed's interview.

Detective Edwards stated that to the best of his knowledge, the Tennessee Department of Children's Services was not called to 2694 Kate Bond Road on May 18, 2018.  Detective Edwards stated that neither he nor Detective Evans drew their weapon at any point

10

during the interview.  Detective Edwards was not sure whether Reed was provided food or water during the interview.  Detective Edwards stated that he did not keep a detention log for the interview. Detective Edwards testified that he did not threaten or coerce Reed into waiving his *Miranda* rights.

## II.  PROPOSED CONCLUSIONS OF LAW

Reed argues that officers violated his Fourth and Fifth Amendment rights.  Specifically, Reed contends that the affidavit supporting the search of 2694 Kate Bond Road lacked probable cause. (Def.'s Mot. to Suppress 3-4, ECF No. 28.)  Reed further contends that his written incriminating statement should be suppressed because he was questioned prior to being Mirandized.  (*Id.* at 12-15.)  In its response, the government argues that the affidavit supporting the 2694 Kate Bond Road warrant established probable cause.  (Gov't's Resp. 5, ECF No. 29.)  As to Reed's statement, the government argues that Reed was properly Mirandized prior to the interview and that his subsequent confession was voluntary, knowing, and intelligent.  (*Id.* at 12.)

The motion to suppress raises the following issues:  (1) whether probable cause supports the 2694 Kate Bond Road warrant; (2) whether Reed was properly Mirandized prior to questioning and whether Reed's waiver and confession were voluntary.

A.  <u>The Credibility of the Witnesses</u>

The threshold issue is the credibility of Detectives Evans

11

and Edwards.    The court is given wide latitude in making its
witness credibility determinations.  *United States v. Haynes*, 301
F.3d 669, 679 (6th Cir. 2002)(citing *Anderson v. Bessemer City,
N.C.*, 470 U.S. 564, 573-75 (1985)).    "In assessing credibility, a
court considers numerous factors, ultimately relying on the common
sense tests of reason and logic." *United States v. Caldwell*, 2015
WL 179583, at *9 (E.D. Tenn. Jan. 14, 2015).    This court finds
both witnesses in this case credible.    Specifically, Detectives
Evans and Edwards testified consistently with one another.    They
provided virtually identical accounts of the events on May 18,
2018.

B.    <u>Whether Probable Cause Supports the 2694 Kate Bond Road
      Warrant</u>

     The Fourth Amendment provides, in relevant part, that "[t]he
right of the people to be secure in their persons, houses, papers,
and effects, against unreasonable searches and seizures, shall not
be violated[.]"   U.S. Const. amend. IV.    The Fourth Amendment
requires a warrant supported by probable cause.  *United States v.
Hines*, 885 F.3d 919, 923 (6th Cir. 2018).    Probable cause is
established where the proponent of the warrant submits an affidavit
that "indicate[s] a fair probability that evidence of a crime will
be located on the premises of the proposed search." *Id.* (quoting
*United States v. Dyer*, 580 F.3d 386, 390 (6th Cir. 2009)).    The
court is limited to examining the information contained within the

four corners of the affidavit.[5]  *Id.*  When assessing probable cause, the court looks to the "totality of the circumstances" — "including a confidential informant's 'veracity, reliability, and basis of knowledge.'"  *Id.* (quoting *United States v. May*, 399 F.3d 817 (6th Cir. 2005)).  If the search warrant names a specific location, "the affidavit must establish a nexus between the place to be searched and the evidence to be sought."  *United States v. Brooks*, 594 F.3d 488, 492 (6th Cir. 2010)(internal quotations omitted).

Reed argues that the affidavit supporting the 2694 Kate Bond Road warrant lacked the required nexus between the place to be searched and the evidence to be sought.  (Def.'s Mot. to Suppress 4, ECF No. 28.)  Reed points out that the affidavit only mentions controlled purchases of marijuana made by the CI at Reed's business located at 3900 Jackson Avenue and Reed's mother's home located at 3792 Orchi.  (*Id.* at 5.)  As Reed states in his motion, "[t]he search warrant for 2694 Kate Bond Road does not mention the sale of marijuana from the residence but instead references the marijuana sales from Mr. Reed's business and his mother's home. . . . The Kate Bond affidavit did not provide reasonable cause to believe that any evidence regarding the marijuana Mr. Reed

---

[5] The court notes that there were actually three affidavits, all sworn to simultaneously, that were presented to Judge Kight in support of the three search warrants, in all of which Reed was the target.

allegedly sold to the CI could be located in his home." (*Id.*) Rather, according to Reed, the affidavit "merely suggested that Mr. Reed's residence contained financial records, currency, and records relating to the suspected crime." (*Id.*) Accordingly, Reed asserts that the information contained in the Kate Bond affidavit "was insufficient to establish the requisite nexus between the residence and evidence of drug dealing." (*Id.*)

The government argues that there was a sufficient nexus between the residence named in the warrant and the documents sought based on the information contained in the affidavit detailing the confidential informant's personal knowledge of Reed's alleged drug trafficking activity.[6] (Gov't's Resp. 7, ECF No. 29.) In support, the government relies on *United States v. Williams*, 544 F.3d 683 (6th Cir. 2008).

In *Williams*, the Sixth Circuit rejected the defendant's argument that the warrant application failed to establish a nexus between the defendant's alleged illegal use of handguns and his apartment. *Id.* at 686. While the defendant was correct that the affidavit never tied the handguns to his apartment, the Sixth Circuit found that he overlooked the government's "logical, and

---

[6] The government alternatively argues that the good faith exception applies because "the officers were reasonably entitled to rely on the warrant in searching the house." (Gov't's Resp. 9, ECF No. 29.) Because probable cause supports the 2694 Kate Bond Road warrant a discussion of the good faith exception is omitted.

indeed legally correct, assertion that 'it is reasonable to suppose that some criminals store evidence of their crimes in their homes, even though no criminal activity or contraband is observed there.'" *Id.* at 686-87.  The Sixth Circuit found that because the warrant application demonstrated "continuing and related illegal firearm activity," the issuing judge was correct to infer that evidence pertaining to the handguns would be found at the defendant's residence.  *Id.* at 687.

The Sixth Circuit made clear that a "magistrate may infer a nexus between a suspect and his residence, depending upon 'the type of crime being investigated, the nature of things to be seized, the extent of an opportunity to conceal the evidence elsewhere and the normal inferences that may be drawn as to likely hiding places.'"  *Id.* (quoting *United States v. Savoca*, 761 F.2d 292, 298 (6th Cir. 1985)).  The Sixth Circuit also highlighted a line of cases holding "that an issuing judge may infer that drug traffickers use their homes to store drugs and otherwise further their drug trafficking." *Id.* (citing *United States v. Gunter*, 266 F. App'x 415, 419 (6th Cir. 2008)(unpublished decision)(noting that Sixth Circuit precedents establish that there is a nexus between a drug dealer's criminal activity and the dealer's residence when there is reliable evidence connecting the criminal activity to the residence); *United States v. Newton*, 389 F.3d 631, 636 (6th Cir. 2004), *vacated in part on other grounds*, 546 U.S.

15

803, 126 S.Ct. 280, 163 L.Ed.2d 35 (2005)(holding that in cases involving drug traffickers engaged in "continuing operations," the "lack of a direct known link between the criminal activity and the residence[ ] becomes minimal"); *United States v. Miggins*, 302 F.3d 384, 393-94 (6th Cir. 2002); *United States v. Caicendo*, 85 F.3d 1184, 1192-93 (6th Cir. 1996)(holding that there was probable cause based on an affidavit that stated, in the affiant's experience, many drug traffickers use their residences to conduct their drug trafficking activities)).

In holding that there was a sufficient nexus based on the defendant's involvement in a variety of suspected crimes, the Sixth Circuit "join[ed] other circuits which have held, in cases involving a variety of suspected crimes, that an issuing judge may infer that a criminal suspect keeps the 'instrumentalities and fruits' of his crime in his residence." *Id.* at 688 (citing *United States v. Jones*, 994 F.2d 1051, 1056 (3d Cir. 1993); *United States v. Anderson*, 851 F.2d 727, 729 (4th Cir. 1988); *United States v. Steeves*, 525 F.2d 33, 38 (8th Cir. 1975); *Bastida v. Henderson*, 487 F.2d 860, 861-62 (5th Cir. 1973)).

Here, the 2694 Kate Bond Road affidavit established that Reed was a known drug dealer who was likely in possession of documents related to drug trafficking based on the CI's reliable information and Detective Evans's law enforcement experience and specialized training. (*See* Aff., App., & Search Warrant for 2694 Kate Bond

16

Road, Ex. 2.)  Specifically, the affidavit stated that the CI observed Reed selling marijuana from both 3900 Jackson Avenue and 3792 Orchi within twenty days prior the application for the 2694 Kate Bond Road warrant.  (*Id.*)  The affidavit also stated that the CI purchased marijuana from Reed at both 3900 Jackson Avenue and 3792 Orchi within twenty days prior to the application.  (*Id.*)  As the Sixth Circuit held in *Williams*, it is reasonable for a judge to infer that "instrumentalities and fruits" of drug trafficking may be found inside a known drug dealer's residence.  *Williams*, 544 F.3d at 687-88.  Based on the totality of the circumstances, the issuing judge was reasonable in inferring that fruits of Reed's alleged drug trafficking activities would be found at 2694 Kate Bond Road.  The judge's reasonable inference was enough to establish a nexus between the place to be searched and the evidence to be sought.  *Brooks*, 594 F.3d at 492.  This court submits that probable cause supports the 2694 Kate Bond Road warrant. Accordingly, the evidence recovered from the search of 2964 Kate Bond Road should not be suppressed.

C.   *Miranda* Rights and Voluntariness of Reed's Statement

The final issue concerns when Reed was Mirandized and whether Reed's confession was voluntary.  In his written motion, Reed argues that his statement should be suppressed because he was improperly questioned before being Mirandized.  (Def.'s Mot. to Suppress 12, ECF No. 28.)  Reed argues that Detectives Evans and

Edwards deliberately evaded *Miranda* by informing Reed of his rights "mid-stream" — that is, after the interview had already started.[7] (*Id.* at 14.)   The government argues that Reed was properly Mirandized before being questioned.  (Gov't's Resp. 12, ECF No. 29.)

The uncontroverted testimony establishes that Reed was Mirandized *before* the interview started.   Detective Evans testified that Reed was not questioned at any point before he was Mirandized.   According to Detective Evans, Reed was methodically informed of his *Miranda* rights.   Reed was asked if he understood each right separately.   Reed acknowledged that he understood his *Miranda* rights by initialing next to each right on the top page of the MPD Defendant Statement Form.  (*See* Reed's Statement & Waiver, Ex. 1.)

The only issue then is whether Reed's confession was voluntary, knowing, and intelligent.  (*Id.*)   Reed challenges the voluntariness of his statement by alleging generally that his confession was coerced.   If a defendant can show that "'coercive police activity' caused him to make an involuntary confession, due process prohibits the government from relying on the statement."

---

[7] Reed also argues in his motion that his statement should be suppressed because it was obtained as the fruit of the unlawful search of 2694 Kate Bond Road As discussed *supra*, the search warrant for 2694 Kate Bond Road was supported by probable cause. *See supra* Section II.B. A discussion of Reed's "fruit of the poisonous tree" argument is omitted.

*Jackson v. McKee*, 525 F.3d 430, 433 (6th Cir. 2008)(quoting *Connolly*, 479 U.S. at 167). Voluntariness is determined by examining "'whether a defendant's will was overborne' by the circumstances surrounding the giving of a confession." *Dickerson v. United States*, 530 U.S. 428, 434 (2000)(quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973)). This inquiry takes into account "'the totality of all the surrounding circumstances — both the characteristics of the accused and the details of the interrogation.'" *Id.* (quoting *Schneckloth*, 412 U.S. at 226). Relevant factors in assessing the level of coercion are "age, education and intelligence of the suspect; whether the suspect was advised of his *Miranda* rights; the length of the questioning; and the use of physical punishment." *Jackson*, 525 F.3d at 433-34 (citing *Schneckloth*, 412 U.S. at 226). Similarly, "[a] waiver must be 'the product of a free and deliberate choice rather than intimidation, coercion, or deception . . . .'" *Berghuis*, 560 U.S. at 371 (quoting *Moran v. Burbine,* 475 U.S. 412, 421 (1986)).

Considering all the relevant factors, the court finds that Reed's statement was not a product of police coercion or intimidation. Based on Reed's conduct and the uncontroverted testimony, this court considers Reed to be of average or above-average intelligence. According to Detective Evans, Reed has experience with the criminal justice system and with custodial police interviews. Further, it is undisputed from the testimony

that Reed was advised of his *Miranda* warnings and that Reed suffered no "physical punishment." *Jackson*, 525 F.3d at 433-34. There is simply no evidence of any inherently coercive tactics, either from the nature of the police questioning or the environment in which it took place. Reed was questioned in his children's bedroom, an environment that does not in the least suggest coerciveness. Regarding the length of the interrogation, the Supreme Court has stated that a lengthy interrogation "before a statement is made is strong evidence that the accused did not validly waive his rights." *Miranda*, 384 U.S. at 475. The total length of the interrogation in the present case was approximately forty-five minutes, which further suggests a lack of coerciveness.

There is no reason to believe, under circumstances such as are present here, that Reed's responses to Detective Evans or Detective Edwards's questions were the result of illegitimate police coercion. *See Jackson*, 525 F.3d at 434-35 (listing a number of cases that demonstrate "the kinds of involuntary-confession fact patterns that the Supreme Court has condemned"). Accordingly, the court finds that Reed made the statement he is now attempting to suppress voluntarily, "in the unfettered exercise of his own will." *Miranda*, 384 U.S. at 460.

## III. CONCLUSION

For the reasons expressed above, it is recommended that Reed's motion to suppress be denied.

Respectfully submitted this 4th day of March, 2020.

s/Diane K. Vescovo
DIANE K. VESCOVO
CHIEF UNITED STATES MAGISTRATE JUDGE

NOTICE

Any objections or exceptions to this report must be filed within
fourteen (14) days after being served with a copy of the report.
28 U.S.C. § 636(b)(1)(C).   Failure to file them within fourteen
(14) days may constitute a waiver of objections, exceptions, and
any further appeal.   Any party objecting to this report must make
arrangements for a transcript of the hearing to be prepared.