**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
|     **Plaintiff,** ) | |
| ) | |
| **vs.** ) | |
| ) | **Case No. 2:19-cr-20165-JTF** |
| **TERRY REED,** ) | |
| ) | |
|     **Defendant.** ) | |
| ) | |

**ORDER ADOPTING IN PART AND REJECTING IN PART THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO DENY DEFENDANT'S MOTION TO SUPPRESS, AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO SUPPRESS**

Before the Court is Defendant Terry Reed's Motion to Suppress filed on December 20, 2019. (ECF No. 28.) The Motion was referred to the Magistrate Judge who held a hearing on the matter on February 19, 2020. (ECF No. 37.) The Magistrate Judge issued a Report and Recommendation on March 4, 2020 recommending that Defendant's Motion to Suppress be denied. (ECF No. 39.) Defendant filed timely Objections on March 18, 2020. (ECF No. 40.) The United States filed a Response to Defendant's Objections on March 31, 2020. (ECF No. 44.)

For the following reasons, the Court finds that the Magistrate Judge's Report and Recommendation should be **ADOPTED in part and REJECTED in part** and **GRANTS in part and DENIES in part** Defendant's Motion to Suppress.

### LEGAL STANDARD

Congress passed 28 U.S.C. § 636(b) "to relieve some of the burden on the federal courts by permitting the assignment of certain district court duties to magistrates." *United States v. Curtis*, 237

F.3d 598, 602 (6th Cir. 2001). Pursuant to the provision, magistrate judges may hear and determine any pretrial matter pending before the Court, except various dispositive motions. 28 U.S.C. § 636(b)(1)(A). Regarding those excepted dispositive motions, magistrate judges may still hear and submit to the district court proposed findings of fact and recommendations for disposition. 28 U.S.C. § 636(b)(1)(B). Upon hearing a pending matter, "[T]he magistrate judge must enter a recommended disposition, including, if appropriate, proposed findings of fact." Fed. R. Civ. P. 72(b)(1); *see also Baker v. Peterson*, 67 F. App'x 308, 310 (6th Cir. 2003). Any party who disagrees with a magistrate's proposed findings and recommendation may file written objections to the report and recommendation. Fed. R. Civ. P. 72(b)(2).

The standard of review that is applied by the district court depends on the nature of the matter considered by the magistrate judge. *See Baker v. Peterson*, 67 F. App'x 308, 310 (6th Cir. 2003) (citations omitted). Motions to suppress evidence are among the motions in criminal cases that are subject to *de novo* review. *See* 28 U.S.C. § 636 (b)(1)(A); *U.S. Fid. & Guarantee Co. v. Thomas Solvent Co.,* 955 F.2d 1085, 1088 (6th Cir. 1992). Upon review of the evidence, the district court may accept, reject, or modify the proposed findings or recommendations of the magistrate judge. *Brown v. Board of Educ.*, 47 F. Supp. 3d 665, 674 (W.D. Tenn. 2014); *see also* 28 U.S.C. § 636(b)(1). The court "may also receive further evidence or recommit the matter to the [m]agistrate [j]udge with instructions." *Moses v. Gardner*, No. 2:14-cv-2706-SHL-dkv, 2015 U.S. Dist. LEXIS 29701, at *3 (W.D. Tenn. Mar. 11, 2015). A district judge should adopt the findings and rulings of the magistrate judge to which no specific objection is filed. *Brown*, 47 F. Supp. 3d at 674.

## **FINDINGS OF FACT**

In her Report and Recommendation, the Magistrate Judge sets forth proposed findings of

fact. (ECF No. 93, 3–11.) Defendant first objects to one of the Magistrate Judge's factual findings, specifically that Defendant was a known drug dealer. (ECF No. 40, 2.) While the Magistrate Judge does not make the outright assertion in her proposed findings of fact that Defendant is a "known drug dealer," the Magistrate Judge later relies on that finding in her proposed conclusions of law. The Magistrate Judge refers to Defendant as a "known drug dealer" in the context of the search warrant affidavit containing information that the Confidential Informant ("the CI") has purchased drugs from Defendant in the past. Notably, Defendant does not object to the reliability of the CI. Thus, the Magistrate Judge had sufficient reason to rely on the information contained in the affidavit about the CI's interactions with Defendant and refer broadly to Defendant as a "known drug dealer." The Court adopts and incorporates the Magistrate Judge's proposed findings of fact.

## **ANALYSIS**

Defendant raises two additional objections to the Magistrate Judge's Report and Recommendation. First, Defendant objects to the Magistrate Judge's finding that the search warrant for Defendant's residence at 2694 Kate Bond Road was supported by probable cause. (ECF No. 40, 3.) Second, Defendant objects to the Magistrate Judge's finding that Defendant was properly given his Miranda warnings prior to giving any statement and that Defendant's subsequent statement was knowing and voluntary. (*Id.* at 4.) The Court will address these objections below.

Probable Cause

Defendant objects to the Magistrate Judge's recommendation that the search of Defendant's residence at 2694 Kate Bond Road was supported by probable cause because there was no indication that any criminal activity had been observed at the home prior to the search. (*Id.* at 3–4.) Defendant agrees with the Magistrate Judge that "it is reasonable for a judge to infer that 'instrumentalities and

3

fruits' of drug trafficking may be found inside a known drug dealer's residence," but disagrees that such an inference was justified in this case because "there is no indication that any criminal activity had been observed at [Defendant's] residence prior to the search." (*Id.* at 3–4.)

The Fourth Amendment requires a search warrant to be supported by probable cause. *United States v. Jackson*, 470 F.3d 299, 306 (6th Cir. 2006). Probable cause exists when there is "a fair probability that evidence of a crime will be located on the premises of the proposed search." *United States v. Jenkins*, 396 F.3d 751, 760 (6th Cir. 2005) (citation omitted); *see also United States v. Washington*, 380 F.3d 236, 240 (6th Cir. 2004) (applying same probable cause standard for a search warrant limited to documents and records relating to drug trafficking). When evaluating the existence of probable cause, a court must look at the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). A court's determination of probable cause is limited to "the information [contained] within the four corners of the affidavit supporting the search warrant request." *Jackson*, 470 F.3d at 306. Such an affidavit in support of a search warrant must indicate "a nexus between the place to be searched and the evidence sought." *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004). "The connection between the residence and the evidence of criminal activity must be specific and concrete, not 'vague' or 'generalized.'" *United States v. Brown*, 828 F.3d 375, 382 (6th Cir. 2016). The Sixth Circuit has held that a judge is "entitled to draw a reasonable inference that evidence of a crime is likely to be found where *known* drug traffickers reside." *United States v. Brown*, 801 F.3d 679, 688 (6th Cir. 2015) (emphasis in original). However, the Sixth Circuit has never held that "a suspect's 'status as a drug dealer, standing alone, gives rise to a fair probability that drugs will be found in his home.'" *Brown*, 828 F.3d at 383 (citing *United States v. Frazier*, 423 F.3d 526, 533 (6th Cir. 2005)). There must be "reliable evidence connecting the known drug

4

dealer's ongoing criminal activity to the residence," meaning there must be "reliable facts showing that the residence had been used in drug trafficking, such as an informant who observed drug deals or drug paraphernalia in or around the residence." *Id.*

Here, the Magistrate Judge found that based on the Sixth Circuit precedent that "'an issuing judge may infer that drug traffickers use their homes to store drugs and otherwise further their drug trafficking,'" the issuing judge in this case "was reasonable in inferring that fruits of [Defendant's] alleged drug trafficking activities would be found at 2694 Kate Bond Road" because the CI had established that Defendant was a known drug trafficker. (ECF No. 39, 15–17.) Thus, probable cause supported the 2694 Kate Bond Road search warrant.

This Court disagrees that the 2694 Kate Bond Road search warrant for "Bank/Financial Records, U.S. Currency, Drug Records, and Proceeds from Drug Funds" was supported by probable cause. The Magistrate Judge and the government rely primarily on *United States v. Williams* to support the proposition that "'it is reasonable to suppose that some criminals store evidence of their crimes in their homes, even though no criminal activity or contraband is observed there.'" 544 F.3d 683, 686–87 (6th Cir. 2008). The Magistrate Judge also relied on *Williams* for the Sixth Circuit's highlighting of a line of cases holding "that an issuing judge may infer that drug traffickers use their homes to store drugs and otherwise further their drug trafficking." *Id.* at 687. The issue is that in the Report and Recommendation, the Magistrate Judge failed to include the follow-up to that statement. That is, the cases that the Sixth Circuit in *Williams* cite in support of that proposition hold that "[t]he mere fact that someone is a drug dealer is not alone sufficient to establish probable cause to search their home." *United States v. Gunter*, 266 F. App'x 415, 418 (6th Cir. 2008). The Sixth Circuit has made clear that "as a general matter, . . . if the affidavit fails to include facts that directly connect the

5

residence with the suspected drug dealing activity, . . . it cannot be inferred that drugs will be found in the defendant's home—even if the defendant is a known drug dealer." *Brown*, 828 F.3d at 384.[1]

The affidavit for Defendant's residence at 2694 Kate Bond Road established that within twenty days prior to the application for the 2694 Kate Bond Road search warrant, the CI observed Defendant selling marijuana from both 3900 Jackson Avenue and 3792 Orchi and the CI purchased marijuana from Defendant from those locations. (ECF No. 28-1, 1.) While this information establishes that Defendant is a known drug dealer, it is insufficient information, standing alone, to create a nexus between this residence and the suspected drug dealing activity. The affidavit does not contain any information about marijuana sales occurring at 2694 Kate Bond Road or any evidence that Defendant used that residence to store drugs or evidence of any drug trafficking, nor does the affidavit suggest that any suspicious activity had taken place there. *See Brown*, 828 F.3d at 382; (ECF No. 28-1, 1.) The 2694 Kate Bond Road affidavit also does not suggest that the CI himself had purchased drugs from that residence or that police had ever conducted surveillance at that residence. *See Brown*, 828 F.3d at 382; *see also United States v. Ellison*, 632 F.3d 347, 349 (6th Cir. 2011) (inference of a fair probability that drugs were being stored in the residence or that drug trafficking was taking place from the residence was reasonable because the affidavit explained that a confidential informant had observed someone come out of the defendant's residence, engage in a drug transactions, and then return into the residence); (ECF No. 28-1, 1.) Moreover, the affidavit fails to include a statement of "the affiant officer's experience that drug dealers keep evidence of dealing at their residence." *See United States v. Goward*, 188 F. App'x 355, 358 (6th Cir. 2006). In

---

[1] An "exception" to this general proposition exists in cases where the affidavits do not "just establish that the defendants were drug dealers, but contain[] overwhelming evidence that the defendants were major players in a large, ongoing drug-trafficking operation." *Brown*, 828 F.3d at 382 n.2. Here, the affidavit contains no information suggesting Defendant was part of such a large, ongoing drug-trafficking operation.

sum, this affidavit, like the one in *Brown*, lacks "any evidence showing that . . . he had a car directly tied to his drug trafficking activities, that such car was parked at his suspected residence, or in fact, that there were any suspicious communications tying his criminal activities to the suspect residence." *United States v. Sumlin*, No. 18-3819, 2020 U.S. App. LEXIS 12744, at *15 (6th Cir. Apr. 21, 2020). The affidavit provides no "reliable evidence connecting the known drug dealer's ongoing criminal activity to the residence." *Brown*, 828 F.3d at 383. Accordingly, the Court **REJECTS** the Magistrate Judge's recommendation that probable cause supports the 2694 Kate Bond Road search warrant and that the evidence recovered from the search of 2694 Kate Bond Road should not be suppressed.

Because this Court finds no probable cause to support the 2694 Kate Bond Road search warrant, the next issue is whether the good-faith exception applies. The Magistrate Judge did not make this determination, as the Magistrate Judge found sufficient probable cause. Defendant, in his Objections, notes that he "maintains that the exception would not apply for the reasons stated in his Motion to Suppress." (ECF No. 40, 4.)

While evidence obtained in violation of the Fourth Amendment is typically excluded pursuant to the exclusionary rule, "the Supreme Court has created an exception to the exclusionary rule for evidence 'seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective.'" *United States v. White*, 874 F.3d 490, 496 (quoting *United States v. Leon*, 468 U.S. 897, 905 (1984)). This good faith inquiry turns upon "whether a reasonably well-trained officer would have known that the search was illegal despite the [judge's] authorization." *Leon*, 468 U.S. at 922 n.23. If the search warrant contains "a minimally sufficient nexus between the illegal activity and the place to be searched to support an officer's good-faith belief in the warrant's validity, even if

7

the information provided was not enough to establish probable cause," the evidence seized from the search should not be suppressed. *United States v. Carpenter*, 360 F.3d 591, 596 (6th Cir. 2004). The good faith exception does not apply, however, when the "warrant [is] based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *Id.* at 923 (citation omitted); (*see also* ECF No. 28, 7 ("In this case, the third circumstance described by the *Leon* court is in issue: when the affidavit is 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'")). This good faith inquiry involves "examination of the affidavit for particularized facts that indicate veracity, reliability, and basis of knowledge and go beyond bare conclusions and suppositions." *United States v. McPhearson*, 469 F.3d 518, 526 (6th Cir. 2006) (citing *United States v. Laughton*, 409 F.3d 744, 748–49 (6th Cir. 2005)). As the Sixth Circuit recently explained, "[t]he good faith exception clearly applies where the affidavit 'tie[s] the alleged drug activity to [the defendant's] residence,' is 'based upon multiple events,' and 'relies on verifiable facts, not conclusory assertions, unsubstantiated hearsay, or a purely subjective belief that [the defendant] was involved in drug trafficking.'" *United States v. Govea*, 2020 U.S. App. LEXIS 9657, at \*6 (6th Cir. Mar. 26, 2020) (citing *United States v. Gilbert*, No. 19-3456, 2020 U.S. App. LEXIS 7590, at \*5 (6th Cir. Mar. 11, 2020)). Furthermore, "[t]he Sixth Circuit has applied the good-faith exception when defendants 'were known to have participated previously in the type of criminal activity that the police were investigating,' as well as when the officer relied 'on his years of experience as a narcotics investigator and the knowledge he had acquired of drug dealers' business practices.'" *United States v. Thirkill*, No. 3:17-cr-00056-1, 2017 U.S. Dist. LEXIS 166131, at \*17 (M.D. Tenn. Oct. 5, 2017) (citing *United States v. McPhearson*, 469 F.3d 518, 526 (6th Cir. 2006)).

8

The one-page affidavit, sworn by Detective Evans, contains the following facts: (1) a CI observed Defendant selling marijuana from 3900 Jackson Avenue and 3792 Orchi; (2) the CI purchased marijuana from Defendant at the 3792 Orchi address; (3) the CI had purchased marijuana from Defendant at the 3900 Jackson Avenue address; (4) the CI had previously provided detectives information regarding illegal drug activity that was found to be true and correct; (5) past information provided by the CI resulted in more than four separate drug seizures; and (6) Defendant resides with his girlfriend at 2694 Kate Bond Road. (ECF No. 28-1, 1.) The affidavit also contains a statement that Detective Evans has received specialized education and training in the investigation and detection of illegal drug activity from the Memphis Police Department and has participated in numerous drug arrests, drug seizures, and drug investigations over the course of his career. (*Id.*) Despite only needing a "minimally sufficient nexus" between Defendant's alleged drug trafficking activities and his residence at 2694 Kate Bond Road, the Court simply cannot find any such nexus.

The only connection is Defendant's status as a known drug dealer, based on his prior interactions with the CI. Similar to the affidavits in question in *United States v. Tucker*, the 2694 Kate Bond Road affidavit "only contain[s] 'suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge.'" 742 F. App'x 994, 1001 (6th Cir. 2018). Officer Evans' statement that he has good cause to believe that 2694 Kate Bond Road contains bank records, financial records, U.S. currency, drug records, and proceeds from drug funds lacks any factual basis. The only information included in the affidavit to support this conclusory belief is the fact that Defendant, who happens to be a drug dealer, resides at that residence. Perhaps most concerning to the Court is that the affidavit does not offer a statement from Officer Evans, the affiant, that in his personal experience, "individuals involved with drug

9

trafficking commonly keep records, documents, and money close by." *United States v. Washington*, 380 F.3d 236, 239 (6th Cir. 2004).[2] Without, at the very least, the inclusion of this type of statement, the affidavit "provides nothing more than a mere guess that contraband or evidence of a crime would be found[.]" *United States v. White*, 874 F.3d 490, 496 (6th Cir. 2017) (citations omitted). The affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Carpenter*, 360 F.3d at 595. Accordingly, the good faith exception does not apply, and the Court **GRANTS** Defendant's Motion to Suppress the evidence seized from 2694 Kate Bond Road.

Defendant's Statement

Defendant next objects to the Magistrate Judge's recommendation that Defendant's statement should not be suppressed because Defendant was properly Mirandized prior to giving the statement and because the statement was made knowingly and voluntarily. (ECF No. 40, 4.) Defendant also submits his statement should be suppressed because it flowed from the unconstitutional search of his residence. (*Id.*) The Court will first decide whether Defendant's Fifth Amendment rights were violated before reaching the Fourth Amendment analysis. *See Dunaway v. New York*, 442 U.S. 200, 217 (1979) ("[A]lthough a confession after proper *Miranda* warnings may be found 'voluntary' for

---

[2] *See also Thirkill*, 2017 U.S. Dist. LEXIS 166131 at *17 (applying the good faith exception when the defendant was a known drug dealer and the affidavit establishes that based on an officer's "training and experience, drug dealers often store drugs and proceeds from drug transactions in their houses"); *United States v. Brown*, 801 F.3d 679, 685 (6th Cir. 2015) (finding the good faith exception to apply when the defendant was a known drug dealer and the attesting officer explained that "based on his training and experience and that of other officer with whom he had discussed the case, drug traffickers tend to keep in their residences and vehicles the types of items for which the search warrant was requested" and "described the manner and means by which drug traffickers generate, maintain, and conceal evidence related to drug trafficking"); *United States v. Schultz*, 14 F.3d 1093, 1098 (6th Cir. 1994) ("Moreover, although we have held that [the officer's] 'training and experience' were not sufficient to establish a nexus of probable cause between that crime and the safe deposit boxes, the connection was not so remote as to trip on the 'so lacking' hurdle [of the good faith exception].").

10

purposes of the Fifth Amendment, this type of 'voluntariness' is merely a 'threshold requirement' for Fourth Amendment analysis. Indeed, if the Fifth Amendment has been violated, the Fourth Amendment issue would not have to be reached.").

The issue of whether Defendant was properly Mirandized prior to giving a statement is fundamentally a credibility issue. During the hearing, Detectives Evans testified that Defendant was informed of his *Miranda* rights and was asked whether he understood each right. (ECF No. 39, 18.) According to Detective Evans, Defendant acknowledged that he understood each of his *Miranda* rights by initialing next to each right. (*Id.*) There was no testimony during the hearing that suggested Defendant was not properly Mirandized prior to giving a statement.

"Credibility determinations of the magistrate judge who personally listened to the testimony of a witness should be accepted by a district judge unless in his *de novo* review of the record he finds a reason to question the magistrate judge's assessment." *United States v. Robinson*, No. 1:07-CR-1, 2007 U.S. Dist. LEXIS 53290, at *3 (E.D. Tenn. 2007). After reviewing the record *de novo*, this Court finds no reason to question the Magistrate Judge's assessment. The Magistrate Judge's recommendation that Defendant was properly Mirandized prior to giving a statement is consistent with the record and the Court **ADOPTS** this recommendation.

Because the Court adopts the Magistrate Judge's recommendation that Defendant was properly Mirandized prior to making any statement, the Court must next address Defendant's objection to the Magistrate Judge's recommendation that his statement was made voluntarily and knowingly. (ECF No. 40, 4.) The Magistrate Judge determined that Detective Evans' testimony regarding the actual questioning, the environment in which the questioning took place, and Defendant's conduct was credible. This Court reviews the Magistrate Judge's credibility

11

determinations *de novo*. After reviewing the transcript of the hearing, the Court finds no evidence of coercive tactics used during the questioning. There is also no evidence suggesting that Defendant was subjected to any physical punishment during the questioning. Furthermore, there is no evidence to suggest Defendant lacked sufficient intelligence to make a voluntary and knowing statement. As Detective Evans testified, Defendant had prior experience with the criminal justice system and with custodial police interviews. Detective Evans also testified he considered Defendant to be of at least average intelligence. Accordingly, the Court finds no reason to question the Magistrate Judge's assessment of Detective Evans' credibility and **ADOPTS** the Magistrate Judge's recommendation that Defendant made his statement knowingly, voluntarily, and intelligently.

The Court will now undertake the Fourth Amendment analysis of whether Defendant's statement flowed from the unconstitutional search of his residence—that is, whether Defendant's statement is a fruit of the poisonous tree that must be suppressed. The exclusionary rule excludes both evidence obtained as a direct result of an illegal search and later discovered evidence that was derivative of an illegal search. *United States v. Segura*, 468 U.S. 796, 804 (1984) (citation omitted). "Evidence obtained as a direct result of an unconstitutional search or seizure is plainly subject to exclusion." *Id.* at 804. "The question to be resolved when it is claimed that evidence subsequently obtained is 'tainted' or is 'fruit' of a prior illegality is whether the challenged evidence was 'come at by exploitation of [the initial] illegality or instead by means *sufficiently distinguishable* to be purged of the primary taint.'" *Id.* at 804–05 (citation omitted) (emphasis in original); *see also Wong Son v. United States*, 371 U.S. 471, 488 (1963). Evidence should not be excluded "if the connection between the illegal police conduct and the discovery and seizure of the evidence is 'so attenuated as to dissipate the taint.'" *Id.* at 805 (citing *Nardone v. United States*, 308 U.S. 338, 341 (1939).

12

Here, the facts are straightforward. At approximately 6:00 A.M., six officers entered Defendant's residence at 2694 Kate Bond Road pursuant to a search warrant this Court has deemed invalid. Upon waking up from his sleep, Defendant was detained in handcuffs. (ECF No. 39, 7.) The officers subsequently searched the residence for approximately one and a half to two hours. (*Id.*) At some point during that search, Defendant was given his *Miranda* rights and interviewed by Detectives Evans and Edwards in a separate upstairs bedroom. (*Id.* at 8.) Defendant was asked various questions about the gun, drugs, and money found during the search. (ECF No. 28-3.) Defendant incriminated himself *after* being confronted with illegally obtained evidence. Thus, such statements were obtained solely through the exploitation of the illegal search of his residence. As a leading treatise, and the Sixth Circuit, recognizes:

> In the typical case in which the defendant was present when incriminating evidence was found in an illegal search or in which the defendant was confronted by the police with evidence they had illegally seized, it is apparent that there has been an 'exploitation of that illegality' when the police subsequently question the defendant about that evidence or the crime to which it relates. This is because "the realization that the 'cat is out of the bag' plays a significant role in encouraging the suspect to speak."

*United States v. Baldwin*, 114 F. App'x 675, 683 (6th Cir. 2004) (quoting Wayne R. LaFeve, Search and Seizure § 11.4(b) (3d ed. 1996)). Accordingly, any incriminating statements Defendant made after being confronted with the evidence illegally found in his residence must be suppressed. *See United States v. Flintroy*, 30 F. Supp. 3d 616, 628–29 (W.D. Ky. 2014) ("Because the Court concludes that Defendant's statements were a direct result of being confronted with evidence unlawfully obtained by the police, his statements are suppressed."); *United States v. Van Dyke*, 1:09CR-375, 2010 U.S. Dist. LEXIS 47652, at *9 (W.D. Mich. May 14, 2010) ("The Court concludes that any incriminating statements Defendant made after being presented with (or informed

13

of) the evidence illegally seized from her residence, were obtained expressly and exclusively through exploitation of the illegal search of her residence.").

For the sake of completeness, the Court now analyze whether the attenuation exception should apply to Defendant's statement. Evidence should not be excluded "if the connection between the illegal police conduct and the discovery and seizure of the evidence is 'so attenuated as to dissipate the taint.'" *Id.* at 805 (citing *Nardone v. United States*, 308 U.S. 338, 341 (1939.) The Supreme Court has articulated three factors for courts to consider when determining whether the attenuation exception should apply: (1) the temporal proximity between the unconstitutional conduct and the discovery of the evidence, (2) the presence of intervening circumstances, and (3) the purpose and flagrancy of the official misconduct. *Brown v. Illinois*, 422 U.S. 590, 603–04 (1975). For the reasons that follow, the attenuation exception does not apply to save Defendant's statement from being suppressed.

First, the temporal proximity between the illegal search of 2694 Kate Bond Road and Defendant's statement is minimal. The entire illegal search and subsequent questioning of Defendant lasted, at most, two hours. (ECF No. 39, 7.) Although "there is no 'bright-line' test for temporal proximity," *United States v. Wolfe*, 166 F. App'x 228, 234 (6th Cir. 2006), this insignificant lapse of time indicates that the taint of illegality had not yet dissipated. This factor does not favor attenuation. Second, there were no intervening circumstances between the illegal search and Defendant's statement. The only possible intervening circumstance would be the giving of *Miranda* warnings, but "*Miranda* warnings, *alone* and *per se*, cannot always . . . break, for Fourth Amendment purposes, the causal connection between the illegality and the confession." *Kaupp v. Texas*, 538 U.S. 626, 633 (2003) (citing *Brown*, 422 U.S. at 603); *see also Nance v. United States*,

14

Civ. No. 08-1272-JDT-egb, 2013 U.S. Dist. LEXIS 135300, at *43–44 (W.D. Tenn. Sept. 2, 2013) ("Although [the defendant] was given Miranda warnings, no intervening circumstances dispelled the taint of the illegal arrest."). There is simply no other event that occurred between the officers illegally searching Defendant's residence and Defendant making a statement. Thus, this factor does not favor attenuation. Third, the officers in this case acted purposefully and flagrantly. "The Supreme Court has explained that the purposefulness factor is met when the unlawful action is investigatory, that is, when officers unlawfully seize a defendant 'in the hope that something might turn up.'" *United States v. Williams*, 615 F.3d 657, 670 (6th Cir. 2010) (citation omitted). Officers purposefully entered Defendant's residence, relying upon an objectively invalid search warrant, to find Defendant and any evidence to connect him to drug dealing. Detective Evans, who prepared the affidavit that only alleged that the Defendant was a drug dealer and resided at the residence, should have known that relying upon the search warrant to enter Defendant's residence was likely unconstitutional. Yet, Detective Evans and the other officers entered the home and subsequently questioned Defendant. The police misconduct—the illegal search of Defendant's residence—that both led to the discovery of the evidence and led to Defendant making a statement is "sufficiently deliberate that the exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *United States v. Master*, 614 F.3d 236, 243 (6th Cir. 2010).

Because Defendant's statement was obtained solely through the exploitation of the illegal search of his residence and because the attenuation exception does not apply, Defendant's statement must be suppressed.

## **CONCLUSION**

Upon *de novo* review, the Court hereby **ADOPTS in part and REJECTS in part** the Magistrate Judge's Report and Recommendation, and **GRANTS in part and DENIES in part** Defendant's Motion to Suppress. All evidence seized as a result of executing the search warrant at 2694 Kate Bond Road, including Defendant's statement of admission is **ORDERED** suppressed.

**IT IS SO ORDERED** on this 8th day of June 2020.

*s/John T. Fowlkes, Jr.*
JOHN T. FOWLKES, JR.
United States District Judge